So this is United States v. Saldana. Mr. Jupiter. Thank you, Your Honor. I'm Adari Jupiter on behalf of Appellant Enrique Saldana. Your Honor, I will ask to reserve three minutes for rebuttal. Three minutes? Yes, sir. And, Your Honor, I will argue issues four and five of our brief dealing with the improper reopening of the testimony at the revocation of supervised release. In our view, the district court, in the manner that it reopened it, for the purpose that it reopened it, abandoned its role as a neutral and detached magistrate. The district court reopened. In this case, the district court heard from both parties. Not only did the district court hear from both parties in terms of presentation of evidence, the district court then engaged the parties into a discussion over the adequacy of the government's evidence and began to make findings. As a matter of fact, it made findings with regard to the sufficiency and lack thereof of the evidence in this case. But wasn't the preliminary – it was basically over two days that the judge ruled, and he – and the judge adjudicated the residence issues. The judge did. He did not resolve the Grade A violation. The judge didn't resolve the Grade A violation with regard to whether or not there was a Grade A – whether or not that there was a Grade A violation. I would submit that everything was done at that time when the judge had decided that the Grade A violation – that the government failed to submit sufficient evidence to prove that the Grade A violation was committed by committing a homicide. And that was the judge's final ruling. And the judge then went on a different violation of law. And in fact, when the district court announced what Mr. Saldana was facing, he said those three violations, those two Grade C violations, and said he also violated the law by committing a homicide. And it was obviously apparent to the court by the court's questioning and also by the court's later order to have two witnesses to come and testify to a new matter. Wait a minute. Wait, wait. The same matter. These two witnesses were brought to the court's attention by virtue of the fact offered their videotaped statements to the police. And the district court was looking for, in its own words, clarification of what occurred. Rule of Evidence 614 lets a judge call witnesses and ask questions. Why is this improper when the rules contemplate this? Because the district judge did not ask these witnesses questions that related to the clarification of what defense counsel brought out. Defense counsel brought out the fact that these two witnesses made comments in their statements, not enter their whole statements, made comments that Mr. Saldana and his wife were dancing, that his wife gave him a lap dance when these two guests left the house, and that that's what was going on at that time. But other evidence that was adduced by the parties demonstrated there was apparent bruising on her body when she got to the hospital. The court certainly is within its authority to see what the evidence in totality would have shown. And if these witnesses had testified live, certainly the judge could have asked those witnesses questions, correct? Certainly. And that's why I think it's combined with this whole idea of reopening. Let me bring it to the court's attention. What if the government, after we argued whether or not they sufficiently met their case, instead of the court, the government said, oh, you know, Your Honor, after the defense basically showed that we didn't meet our case and we argued it and now I see where the court's going, we're going to change our theory now after we had our legal arguments. And now we want to bring these two witnesses. Excuse me. Go ahead. All right. There we go. If it's the same question, it would be amazing. Do you think the circumstances are different, though, in a violation of supervised release proceeding? And here's why I ask. The petition for a violation is brought by an arm of the court, probation. It is brought because there appears to be an alleged breach of trust that the court reposed on a defendant when it granted the terms of supervised release. So isn't this a different circumstance where it's really an offense to the court's order, where the court, and it's not the government, but the court's arm is bringing it to the court's attention and the government is certainly producing evidence? Shouldn't this be, at least in this circumstance, completely appropriate because it's the judge's own repose of trust that's been breached by the alleged violation? Okay. So the first question is, are supervised release revocations different? Certainly they are. I mean, certainly we don't have all of the due process protections you would have in a trial. But there certainly are due process protections, and one is that the judicial fact finder has to be neutral and detached. And even the government cites a case which I think talks about the instance where a judge calls a witness at trial. This is in United States v. Ottaviano. They cite it in their brief. Quite frankly, I didn't cite it in my brief, but they did cite it in theirs. And that talks about when a judge oversteps that bound in a jury situation. I think the question of whether or not this judge is indicating, after a close of evidence and after there's argument from both parties and answers to the judge's questions, and the judge says, I want you to be able to answer all of these questions, and the judge then, after the close of the evidence, the judge says, okay, now I want more evidence. I think that's where you lose it for the very fact that then the court is, I think the court is recognizing at that point that, first of all, there's the new theory of why he violated. And second of all, this is the evidence that I want. And third of all, he didn't ask, the district court did not ask any questions with regard to the lap dance, with regard to whether or not they were getting a long fine. You're getting into a really difficult area, right? So number one, you're saying that what you want out of this is for us to come up with a rule with regard to the confines of what a district court may or may not do within the ambit of 614. But more important, this is a, you know, the judge brought it up a moment ago, it's a revocation hearing. You know, any kind of hearing is more informal. Suppression hearings, you know, somebody brings up a name. Well, let's get that person here. You're both the finder of the facts and law in an instance like that. You know, these are all, you know, judges who are aimed at getting to the bottom of what the facts are. Now, if your argument was, look, this judge clearly overstepped his bounds and is shown bias and, you know, you need to overturn the entire thing because, you know, they had an in from my client. If that were the focal point of your argument, that would be a little different. And then along those lines, one question I would have for you is, okay, this additional testimony came in. How is Mr. Saldana prejudiced by it? Okay, so first of all, I'm not looking for a bright line rule. Let's make that clear. I'm not saying that any time a judge calls a witness at a revocation hearing or a judge calls a witness at any kind of hearing. No, but you kind of focused on the, you know, the evidence was closed and now he wants to, you know, do more. I mean, if the more is it looked really good for the defendant and now, you know, I want it to look bad for the defendant so I want to call these people, you know, that would be one thing. Well, this is the point is this is why we're looking at the specific facts here of what happened. So this wasn't a case where the judge is going on the same theory that the government went on. So it's true, an arm of the court files a petition, but then the rules say we have a right to a hearing. And in that hearing, and then Morrissey v. Brewer and Scarpelli give us these due process considerations that we have two different parties, one prosecution and we have a neutral and detached magistrate. So in that instance, when you have the person who is calling for the evidence who already started making findings and appeared to be going to make all findings, didn't indicate at that time that, look, we have a, I want more evidence in this case. But it's really, we're doing our closing analysis, the legal analysis on it. And he says, oh, wait a minute, I got another theory of why there was a violation. It's not the violation of the homicide. But the, my understanding was the petition charged him with committing another, a violation of state law. And he had been charged with homicide, assault, domestic violence, crimes. So there was, that's what I understood in part the petition to be motivated by. So I don't, you can keep calling it a different theory, but it was among the allegations in the petition. I don't think it was. I don't think the assault with the dangerous weapons, And I think the court announced at the onset of the hearing, announced to Mr. Saldana what three violations he was looking at. And the court specifically said. And you're saying it was homicide, not violation of law. Right. And I believe the government's theory was, was that the violation of law occurred by poisoning Mrs. Saldana. And the court found very clearly that the government did not meet that burden. And so the court. Say that again. And of course the court found, clearly found that the government did not meet the burden that they were trying to prove. That he poisoned his wife. So the court said, you know what? You didn't do that government, but I'm going to call in two more witnesses. And we're going to go on this assault, which I think wasn't proven either. And I put that in a brief in another issue. But the court was going on a difference. That's when the court becomes the prosecution. And that's what makes this so different. In a case where the court obviously found that there was problems with this. This is a homicide. My client's being charged with a homicide in court. Does it matter that what's at play is the judge's order? In other words, is it not the judge that ordered the probation sentence? I don't know how that makes a difference. Your Honor, because once again. It's the judge who sentenced him and put him on probation. Yes. And signed an order, and he is to abide by certain requirements of probation. Yes. And he allegedly violated, or not allegedly because he was found by the judge, to have violated the conditions of probation. So given that it is the judge's sentence, it's the judge's order, why cannot the judge call a witness to determine whether there is a violation or not? It is a non-jury proceeding. I'm not saying the judge can't call a witness, Your Honor. I'm saying the way that these facts combine together, the judge took on the role of the prosecution. Your objection is to the method of proceeding by the judge. Exactly. What is it the next step would be? There's been prejudice to my client. Yes. What is the specific testimony elicited in this sort of extra inning, if you will, that is prejudicial? Obviously, this is what the court felt it needed. The court felt this testimony was needed to find that my client was guilty of the assault. So it's clear. So any notion that any part of the testimony was cumulative is just wrong. This was all additional evidence that could essentially pad the case against your client. Well, in this particular case, I think if you were just looking at it, say, I think in this particular case, obviously, this particular judge made the decision to get this particular evidence in what I would characterize as a different theory of prosecution. Just clarify for me one moment. This had to do with marks on the victim's neck, if I'm not mistaken. Yes. And face. And face. Yes. And the judge wanted to clarify when those marks appeared. Is that fairly accurate? Okay. Now, you say clarify. There's a question of chronology here. This is a big problem that I have with this because this word clarify goes used in sentence. I want to clarify what the defense brought out. Believe me, Your Honor, we didn't bring that out. We didn't bring that out, okay? We brought out the relationship between the decedent and our client and what they were doing at that time. I'll tell you what's in the back of my mind. I was just wondering if the witnesses that were called could just as easily have exonerated the defendant or the probation person as inculpated him. In other words, depending on their testimony and the chronology of events, they might have provided favorable testimony. And, Your Honor, as a judge, I don't think if we're going to have a situation where we have a neutral and detached magistrate, I don't think the neutral and detached magistrate should be making those decisions. Thank you. Again, good afternoon, Your Honors. David White for the United States. Your Honors, I think that the fact that this is a revocation of supervised release proceeding, which is not a trial and it's not a criminal matter, does go a long way to answering or resolving the issues that were raised in this appeal. But the government believes that the district court, you know, did not abjure his duty to remain a neutral and unbiased fact finder or arbitrator in this case. Clearly, the district court, if you look at the, of course, it was in connection with the jury trial, criminal jury trial, other Viano factors. This court considers, did the district court, was there a lot of, did it manifest its bias? Did it treat, you know, the parties unfairly? Did it give the parties equal time? How much of the district court's manifestation of any bias may have been observed by the jury? If we agree, if we agree theoretically with your adversary, what remedies are available to us? His closing salvo was the magistrate judge shouldn't have the ability to call witnesses and solicit, you know, to reopen and call witnesses and solicit this type of testimony. Let's say theoretically we agreed. What remedy would be available to us? Well, Your Honor, I think, I mean, first of all, I think that that assumption would necessarily dispense with revocation supervised release proceedings because that's indeed how they are conducted. So I think you are. So we'd eviscerate 614 and our whole structure. I think so. And I think you're also robbing Peter to pay Paul. I mean, you're now turning this into a criminal prosecution. And if indeed there will be no more vindication for the court for its lawful orders and the breach of trust the defendant did break with respect to being on supervised release, then you really do have to come up with an entirely new structure. And I speculate that then we'd just be left, it'd be another criminal trial. The United States would indict the defendant for assault, whatever the charges are, and it would just become another regular criminal prosecution, regular for lack of a better term. But I think that that's what we would be left with. But that is indeed what, I'm sorry, Judge Schwartz, I didn't. Your adversary said that the conditions of supervised release that were charged, the one that was the grade A, was it a charge of homicide or was it a charge of committing an offense, a state law offense? Do you remember? I believe it was committing an offense, either a violation of federal, state, or federal, territorial, or local law. And the factual basis or the sort of specification and the conditions, did it say the defendant was charged by way of information by the Superior Court of the Virgin Islands with laws or was it something different? No, I think it was just a generic. He was charged in the Virgin Islands, the Department of Justice in the Virgin Islands filed information against him, citing charges of domestic violence, assault, homicide. There were, I believe, six charges that were listed in the Virgin Islands information. And that was sort of incorporated by reference into the petition? Yes, Your Honor. That petition was introduced through the probation officer at the revocation proceeding. He makes a good point because besides the violation of probation, of course, there's a homicide case apparently also filed. He says, look, why are you going to make me testify? I'd have to testify and I'm going to make statements and you, the government, are going to use those statements against me in the homicide prosecution. So why isn't it a good point that the probation makes here? You should have just granted me continuance. Wait until the homicide case is over. And by the way, if I'm found guilty, fine. If I'm not, then it's just a violation of probation. Well, Your Honor, I mean, first of all, there's... That's what he was saying in many of his requests for continuance. He says, why are you going to compel me to testify to defend myself when I'm going to have to testify or may have to testify in the homicide case? Yes, Your Honor. And there's nothing, as a practical matter, Your Honor, it's also in the record the United States made that same request too. So the United States thinks that there is some merit to that. But what we're left with here is the fact that the district court declined to do that and declined to proceed with the termination, with the revocation of supervised release. And he is entitled to do that. I mean, it's true that there are many cases. I mean, this is actually, you know, kind of revisiting Bizano again. There are very cogent reasons for waiting until the conclusion of a state or territorial prosecution until this comes and then do the revocation proceeding. But district courts aren't compelled to follow that. And here, you know, the district court stated, I'm not going to do that. And I think that it was concerned with things of fading memories, perhaps loss of evidence. It wanted to go ahead and do this while it was fresh in everyone's minds. So why the district court did that, I think that's why it had the revocation proceeding before the termination of the territorial prosecution. Did Mr. Saldana testify in the criminal prosecution? Your Honor, I don't know. It was tried in the Superior Court, and I believe that he was. I believe.  I believe that he was convicted. No, no. Did he testify? Yes, Your Honor, that I do not know. Okay. But to get back to Judge Greenaway's question regarding what are we left with, I don't think you're left with very much other than just a new criminal prosecution, Your Honor. I would like to follow up on another point your adversary made. Your adversary indicated that the testimony adduced from these two individuals was not really clarifying anything that was offered but was a new area of inquiry. Do you agree with that characterization? No, Your Honor, I don't. The United States does not, and here's why. The defense did offer he wanted to find out, like, what was the interaction between Mr. Saldana and Mrs. Saldana. How were they acting that night? How did they seem to be getting along? Did they seem to be getting along rather swimmingly? Well, I do think that the questions that the district court posed here do follow up on that because the district court inferred that, well, they certainly had a very narrow time frame, that they were alone. I want to find out, you know, could something have happened that maybe then they weren't, you know, maybe they were getting along but, you know, things went poorly and the relations between them soured. So asking them about the condition in which they viewed Mrs. Saldana, I think is in the same vein as the questions that were posed by the defense at that hearing. I don't see that they are completely disconnected or not remotely related such that the questions the district court posed were improper. I wanted to follow up. The brief submitted to us suggests an argument by the government that somehow Mr. Saldana forced the victim to ingest Benadryl. What is the evidence to support a forcible ingestion? Well, I think you're right, yes, Your Honor. I think that the fact that the medical examiner, Dr. Landron, testified that somebody with that much Benadryl in them couldn't have ingested it would be too incapacitated to have done it on its own. And I think that the district court, I think that one can infer based on that testimony that eventually you're going to become so incapacitated by the amount of drug in your system that it did have to be force-fed on you. That's certainly a reasonable interpretation of the evidence. That was the basis. In fact, I believe that the amount of Benadryl in her system was roughly 176 times that what one would normally find in a controlled proper amount of Benadryl taken in response to an allergy. Thank you so much. Yes, Your Honor. Thank you. What's the remedy that you seek? Your Honor, we are asking that the court would reverse the findings of the district court and find that it was in error with regard to the finding of supervised release and revocation. Based on the two grounds that you focused on? Yes, Your Honor. Wouldn't the recent conviction in and of itself be a violation of probation? I mean, in other words, is the issue really moot? That's something I thought about a great deal. I don't think it's mooted, Your Honor, because obviously that conviction could be reversed. But obviously I did think about whether or not it's mooted because I guess the question which this court doesn't really need to resolve is whether then it could go back to the district court and the district court can then make a finding based on the conviction. But I think that this court has to just call the ball and the strike. And you asked for a reversal. There are three specifications of violation. One was not following the instructions of the probation officer. One, the district court found not to be supportive. That is that he changed his residence. And then the third is what we've been calling the grade A violation. Yes, Your Honor. Are you looking for reversal on both for which there was an agreement? At this point I don't think I have sufficient that this court could reverse the grade C violation finding. Thank you. Thank you, Your Honor. Okay, thank you very much, counsel.